[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
SEPTEMBER 7, 2011
JOHN LEY
CLERK

_____

No. 10-11966

_____

D.C. Docket No. 1:06-cv-01994-CC

COVENANT CHRISTIAN MINISTRIES, INC.,
PASTOR FREDERICK T. ANDERSON,

Plaintiffs-Appellants,

versus

CITY OF MARIETTA, GEORGIA,

Defendant-Appellee.

_____

No. 10-12222

_____

D.C. Docket No. 1:06-cv-01994-CC

COVENANT CHRISTIAN MINISTRIES, INC.,
PASTOR FREDERICK T. ANDERSON,

Plaintiffs-Appellees,

versus

CITY OF MARIETTA, GEORGIA,

_____

Appeals from the United States District Court
for the Northern District of Georgia
_____

(September 7, 2011)

Before CARNES, PRYOR and COX, Circuit Judges.

COX, Circuit Judge:

Covenant Christian Ministries, Inc. ("Covenant") and its pastor, Frederick T. Anderson, brought an action against the City of Marietta, Georgia, challenging the validity of its zoning ordinance. As pertinent to this appeal, Covenant and Anderson each allege multiple claims under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc. The district court granted summary judgment in favor of the City and against Covenant and Anderson on all claims except for Covenant's claim that the City's ordinance, as amended in November 2004, facially violates RLUIPA by treating religious assemblies less favorably than non-religious assemblies. On that claim, the court found that the 2004 Ordinance facially violates RLUIPA, but the court also found that Covenant is not entitled to an injunction allowing it to build its church because Covenant has no vested right to the issuance of a permit under Georgia law. The court entered judgment in favor of

Covenant on this claim and awarded nominal damages in the amount of $1. After oral argument and review of the record, we dismiss for lack of subject matter jurisdiction all claims seeking injunctive relief. We affirm the district court in all other respects.

## I.   BACKGROUND & PROCEDURAL HISTORY

Covenant Christian Ministries, Inc. is a non-denominational church that conducts worship services and operates a private school within the City of Marietta. Dissatisfied with its current facilities, Covenant searched for a property on which to construct a new church campus. Covenant planned to build an 800-seat church, a school to accommodate 500 students, a gymnasium, and an activity field.

In October 2004, Covenant entered into a contract to purchase about eight acres of property located in an R-2 residential zone in the City of Marietta. At the time Covenant signed the contract, the City's zoning ordinance allowed religious institutions in residential zones but imposed a minimum lot size requirement of five acres. The five-acre minimum was designed to provide a buffer between churches and the surrounding residential area, thereby protecting the residential area from activities associated with large, modern-day churches.

On November 10, 2004, about two weeks after Covenant signed the contract to purchase, the City amended its zoning ordinance. The amendment was prompted

3

by a lawsuit that alleged the City's five-acre minimum violated RLUIPA because the minimum did not apply to non-religious uses, such as assembly halls and social clubs. The ordinance amended on November 10, 2004 ("2004 Ordinance") is the central focus of this current lawsuit. The 2004 Ordinance eliminated the prior five-acre minimum imposed on religious institutions; in its place, the 2004 Ordinance completely prohibited all religious institutions in a number of residential zoning districts, including the R-2 classification. At the same time, the 2004 Ordinance permitted private parks, playgrounds, and neighborhood recreation centers in the R-2 classification.

About a year after Covenant signed the purchase contract, in November 2005, Covenant closed the purchase of the residentially-zoned property. Before closing, Covenant did not investigate whether an ordinance prohibited its church. It did not know that the 2004 Ordinance prohibited the building of a church in a residential zone.

Several months after closing, in February 2006, Covenant sought a development permit from the City. The City informed Covenant that the 2004 Ordinance struck churches as permitted uses in residential zones and thus Covenant could not apply for a development permit for the purchased property. Instead, the City directed Covenant to seek rezoning to a commercial or institutional zoning

district. Covenant applied for rezoning, but the City denied the application in August 2006. Covenant filed this lawsuit shortly thereafter.

In the thirteen-count First Amended Complaint, Covenant and its pastor Anderson both allege that the City's 2004 Ordinance violates the United States Constitution, the Georgia constitution, Georgia common law, and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc. The only claims at issue in this appeal are those brought under RLUIPA and the Georgia common law vested rights doctrine: Count VI alleges that the 2004 Ordinance substantially burdens the exercise of religious activity, in violation of 42 U.S.C. § 2000cc(a); Count VII alleges that the 2004 Ordinance treats religious assemblies and institutions on less than equal terms with non-religious assemblies and institutions, in violation of 42 U.S.C. § 2000cc(b)(1); Count VIII alleges that the 2004 Ordinance discriminates against an assembly or institution on the basis of religion, in violation of 42 U.S.C. § 2000cc(b)(2); Count IX alleges that the 2004 Ordinance unreasonably limits religious assemblies and institutions, in violation of 42 U.S.C. § 2000(b)(3); and Count XIII alleges that Covenant has a vested right under Georgia law to build a church on its property.[1] As relief on all of these claims, Covenant and Anderson

---

[1] Covenant and Anderson have abandoned any appeal of the other claims in this case by failing to brief them with sufficient clarity in the initial brief. While some of the other claims were mentioned in the "Statement of Issues" section and included in some section headings, neither

5

request an injunction requiring the City to issue all development permits necessary to allow Covenant to construct a church in the R-2 residential zone; Covenant and Anderson also request monetary damages.

The parties filed cross-motions for summary judgment as to all of the RLUIPA claims. The district court granted summary judgment in favor of the City and against Anderson on all the RLUIPA claims because Anderson lacked standing to assert these claims. As to Covenant's claims, the court granted summary judgment in favor of the City on all RLUIPA claims except for the equal-terms claim (Count VII).[2] On that claim, the district court concluded that the 2004 Ordinance facially violates the equal terms provision of RLUIPA because it treats religious assemblies and institutions on less than equal terms with non-religious assemblies and institutions—namely, private parks, playgrounds, and neighborhood recreation centers. And, the court concluded, this differential treatment could not withstand strict scrutiny. To remedy the statutory violation, the district court severed the 2004 Ordinance by striking private

_____

Covenant nor Anderson addresses the merits of these claims in the initial brief. These claims are, therefore, abandoned. *See Marek v. Singletary*, 62 F.3d 1295, 1298 n.2 (11th Cir. 1995) ("Issues not clearly raised in the briefs are considered abandoned." (citation omitted) ); *Greenbriar, Ltd. v. City of Alabaster*, 881 F.2d 1570, 1573 n.6 (11th Cir. 1989) (same).

[2] The equal terms provision of RLUIPA provides:
> No government shall impose or implement a land use regulation in a manner that treats a religious assembly or institution on less than equal terms with a nonreligious assembly or institution.

42 U.S.C. § 2000cc(b)(1).

parks, playgrounds, and neighborhood recreation centers from the list of permitted uses in the R-2 residential classification. After severance, the ordinance prohibited all places of assembly, both religious and non-religious, in residential zones.

Based on the district court's interlocutory order concluding that the November 2004 Ordinance facially violated the equal terms provision of RLUIPA, Covenant applied to the City for a building permit on May 1, 2008. On May 12, 2008, Covenant submitted a land disturbance permit application, a site plan, various construction documents, and fees. The City accepted all submissions. Later that same day, however, the City amended the 2004 Ordinance. We refer to this amended ordinance as the "2008 Ordinance." The 2008 Ordinance eliminated the all-out prohibition of religious assemblies in residential areas and instead classified all places of assembly, both religious and non-religious, as "special uses" requiring special approval by the City Council. A month after submitting the required documents and fees, Covenant contacted the City to inquire about the status of its application. The City told Covenant that the plans could not be sent out for review or comment due to "pending litigation." The City has yet to process Covenant's May 2008 application.

After hearing nothing from the City on the status of its permit application, Covenant filed a motion for final judgment pursuant to Fed. R. Civ. P. 54(b) on August 25, 2008. In this motion, Covenant asked the district court to direct entry of

7

a final judgment on its claim that the City's 2004 Ordinance violates the equal terms provision of RLUIPA; Covenant also asked the district court to enter a permanent injunction requiring the City to process Covenant's building permit application. The district court denied the Rule 54(b) motion on April 28, 2009. Twenty days later, Covenant and Anderson moved to amend the complaint to include claims regarding the 2008 Ordinance and the permit application filed in May 2008. The court denied the motion as untimely. The court found that Covenant was on notice regarding the City's failure to process its permit applications in June 2008, yet Covenant waited almost a year later to move to amend the complaint.

The court later entered final judgment in favor of the City and against Covenant and Anderson on all claims except for Covenant's claim that the 2004 Ordinance violates the equal terms provision of RLUIPA. On that claim, the court entered judgment in favor of Covenant and awarded nominal damages in the amount of $1. The district court found that Covenant was not entitled to injunctive relief because the 2004 Ordinance, after severance, prevented the building of churches in the R-2 residential zone. The court also denied Covenant monetary relief because all of the alleged damages stemmed from Covenant's inability to build a church in the R-2 residential zone, which Covenant was not entitled to do under the severed 2004 Ordinance.

## II. ISSUES ON APPEAL

We address the following issues in this appeal: (1) whether the claims challenging the 2004 Ordinance that seek injunctive relief are moot; (2) whether the claims challenging the 2004 Ordinance that seek damages should be dismissed on the merits; and (3) whether the district court erred in denying Covenant's motion for leave to amend the complaint to include claims relating to the 2008 Ordinance and May 2008 permit application.[3]

## III. STANDARD OF REVIEW

We review the district court's grant of summary judgment de novo, applying the same standards as the district court. *Galvez v. Bruce*, 552 F.3d 1238, 1241 (11th Cir. 2008) (citation omitted). We review the district court's denial of a motion for leave to amend the complaint for abuse of discretion. *Forbus v. Sears Roebuck & Co.*, 30 F.3d 1402, 1404 (11th Cir. 1994).

## IV. DISCUSSION

A. Claims Seeking Injunctive Relief

---

[3] Anderson also appeals the issue of whether the district court erred in concluding that he lacks standing to assert his RLUIPA claims. We affirm the district court's conclusion that Anderson lacks standing to assert claims under RLUIPA (Counts VI through IX). And, as we note in footnote one, Anderson has abandoned any appeal of the other claims.

Mootness is the threshold question in this case for all claims that seek injunctive relief. Article III of the United States Constitution requires that an actual case or controversy must exist at all stages of federal proceedings. *BankWest, Inc. v. Baker*, 446 F.3d 1358, 1363 (11th Cir. 2006) (citation omitted); U.S. Const. art. III, § 2. When a party challenges an ordinance and seeks injunctive relief, a superseding ordinance moots the claim for injunctive relief. *See Crown Media, LLC v. Gwinnett County, Ga.*, 380 F.3d 1317, 1324 (11th Cir. 2004). All of Covenant's RLUIPA claims challenge the 2004 Ordinance and seek injunctive relief requiring the City to issue Covenant a building permit. The 2004 Ordinance was repealed by the enactment of a superseding ordinance in May 2008. As a result, mootness is the threshold issue in this case for all claims seeking injunctive relief.[4] Covenant makes three arguments as to why its claims seeking injunctive relief are not moot. None of them are persuasive.

1. Severance and Vested Rights

---

[4] The district court first concluded that some claims in this case were moot in light of the 2008 Ordinance, but later vacated that mootness ruling. Regardless of what the district court concluded, mootness is a jurisdictional issue that we must address. *See North Carolina v. Rice*, 404 U.S. 244, 246, 92 S. Ct. 402, 404 (1971) ("The question of mootness is . . . one which a federal court must resolve before it assumes jurisdiction." (citation omitted)); *Al Najjar v. Ashcroft*, 273 F.3d 1330, 1336 (11th Cir. 2001) ("[M]ootness is jurisdictional. . . . Any decision on the merits of a moot case or issue would be an impermissible advisory opinion.") (internal quotation marks and citations omitted).

Covenant first argues that its claims for injunctive relief are not moot because, under Georgia law, its right to a building permit vested before the enactment of the 2008 Ordinance, and thus subsequent changes to the 2004 Ordinance did not affect its entitlement to a building permit. This argument, as we understand it, is based on three contentions: First, the 2004 Ordinance violates the equal terms provision of RLUIPA by treating religious assemblies and institutions less favorably than non-religious assemblies and institutions. Second, because the 2004 Ordinance violates RLUIPA, it must be severed, not by striking language allowing non-religious assemblies in residential areas (as the district court did), but by adding language allowing churches in residential zones. Third, after the 2004 Ordinance is severed to allow churches in residential zones, Covenant has a vested right under Georgia law to build its church in a residential zone.

We agree with Covenant that the 2004 Ordinance facially violates the equal terms provision of RLUIPA.[5] But, we conclude that the district court did not err in severing the 2004 Ordinance in a manner that prohibits Covenant from building its church in the R-2 residential zone. As a result, Covenant obtained no vested right under Georgia law to build a church in the residential zone.

---

[5] We discuss the merits of the equal terms claim in Section IV.B.2 below.

11

Severability of a local ordinance is a question of state law. *Artistic Ent. Inc. v. City of Warner Robbins*, 331 F.3d 1196, 1204 (11th Cir. 2003). Under Georgia law, provisions of a statute or ordinance can be severed if those provisions are not mutually dependent on the remaining provisions and legislative intent is not compromised. *Mason v. Home Depot, Inc.*, 658 S.E.2d 603, 608 (Ga. 2008); *see also Union City Bd. of Zoning Appeals v. Justice Outdoor Displays*, 467 S.E.2d 875, 884 (Ga. 1996) ("When a statute cannot be sustained as a whole, the courts will uphold it in part when it is reasonably certain that to do so will correspond with the main purpose which the legislature sought to accomplish.").

The district court first concluded that the 2004 Ordinance facially violates the equal terms provision of RLUIPA because it treats religious assemblies and institutions on less than equal terms with non-religious assemblies and institutions. In particular, the court noted that the 2004 Ordinance permitted private parks, playgrounds, and neighborhood recreation centers while prohibiting religious assemblies. To remedy this unequal treatment, the district court severed the 2004 Ordinance by striking private parks, playgrounds, and neighborhood recreation centers from the list of permitted uses in the R-2 residential classification. After severance, the ordinance prohibited all places of assembly, both religious and non-religious, in residential zones. Covenant claims that this severance methodology was

12

erroneous. According to Covenant, the 2004 Ordinance must be severed, not by striking private parks, playgrounds, and neighborhood recreation centers as permitted uses, but by adding language allowing churches in residential zones.

We conclude that the district court did not err in severing the 2004 Ordinance. The striking of private parks, playgrounds, and neighborhood recreation centers from the list of permitted uses in the R-2 zone is consistent with the purpose of the zoning restrictions in the R-2 zone. The 2004 Ordinance contains a specific purpose for the R-2 zoning classification: "The R-2 district is intended to be used for low density single-family detached housing and residentially compatible uses requiring large amounts of open space." City of Marietta, Ga. Zoning Ordinance, Code § 708.02(A) (2004); Dkt. 96-10 at 7. By striking private parks, playgrounds, and neighborhood recreation centers, the district court remedied the unequal treatment problem while maintaining the residential character of the R-2 zone. The district court did not err in the manner in which it severed the 2004 Ordinance.

Because we find no error in the district court's severance analysis, the 2004 Ordinance, after severance, prohibited Covenant from building a church in the R-2 residential zone. Having concluded that the 2004 Ordinance, after severance, prohibits the building of a church in the R-2 zone, the next question is whether

Covenant nonetheless has a vested right to a development permit. We hold that Covenant has no such right.

State law governs whether a plaintiff has a vested right to a building permit. *Coral Springs St. Sys. Inc.*, *v. City of Sunrise*, 371 F.3d 1320, 1333-34 (11th Cir. 2004). The parties agree, as do we, that Georgia law governs whether Covenant has a vested property right to build a church in a residential zone. The vested rights doctrine under Georgia law recognizes that, in some circumstances, a property owner has a "vested right" to use land in a particular manner, and that land use can continue even if a zoning ordinance is later changed to prohibit that use. To acquire a vested right to development under Georgia law, a property owner must prove one of four conditions: (1) the property owner actually obtained a valid building permit authorizing a specific use under an existing ordinance; (2) the property owner actually applied for a building permit authorizing a specific use under an existing ordinance that authorizes the use, or the purchaser of land contracts to buy land based on the condition that it will be rezoned to allow a specific use; (3) the property owner had a development plan that was approved either formally or informally by the zoning authority, and the property owner expended money in reliance on the development plan; or (4) the property owner made a substantial change in position by expenditures in reliance upon the probability of the issuance of a building permit, based on an

14

existing zoning ordinance and the assurance of zoning officials. *See WMM Props., Inc. v. Cobb Cnty.*, 339 S.E.2d 252, 254-55 (Ga. 1986). "It is apparent . . . that all the bases enumerated in *WMM Properties* for the accrual of vested rights involve some species of estoppel." *Union Cnty. v. CGP, Inc.*, 589 S.E.2d 240, 242 (Ga. 2003).

Under the Georgia rules for vested property rights, Covenant has failed to show that it acquired a vested right to develop a church in the R-2 residential zone. None of the conditions necessary to acquire a vested right to development are present in this case. First, Covenant has never actually received a building permit from the City authorizing the building of its church campus. Second, Covenant did not apply for or attempt to apply for a building permit when the City's zoning regulations allowed it to build its church campus on the property; Covenant attempted to apply for a permit in February 2006 (when the City directed Covenant to seek rezoning), but at that time the 2004 Ordinance, as severed, prohibited the building of the church. Third, no development plan was ever approved in this case upon which Covenant could reasonably rely. Fourth, the City has never made any assurances that Covenant would receive a building permit.[6]

---

[6] Anderson testified in his deposition that he discussed his plans to build a church with a member of the City Council and the City Manager. But he did not testify that the officials made any promises or assurances that Covenant would be able to build a church in the R-2 residential zone.

Covenant does not take issue with this straightforward application of the vested rights doctrine under Georgia law. Instead, Covenant argues that an applicant has a vested right under Georgia law to a building permit when he or she applies for the permit under an ordinance that is later ruled to be partially invalid. Specifically, Covenant contends that it is entitled to build its church on the property because it attempted to apply for a building permit under the November 2004 Ordinance, and the district court later ruled that ordinance to be partially invalid. We reject Covenant's vested rights argument.

Covenant's vested rights argument does not square with the equitable principles of estoppel on which the vested rights doctrine is based. Under Georgia law, the vested rights doctrine "is derived from the principle of equitable estoppel in that the landowner, relying in good faith, upon some act or omission of the government, has made a substantial change in position or incurred such extensive obligation and expenses that it would be highly inequitable and unjust to destroy the rights he has acquired." *Cohn Cmtys., Inc. v. Clayton Cnty.*, 359 S.E.2d 887, 889 (Ga. 1987) (citation omitted). In this case, the City of Marietta has not done anything suggesting that Covenant would be entitled to build a church on its property. In fact, when Covenant attempted to apply for a permit in February 2006, the 2004 Ordinance, as severed, prohibited the building of a church. And, because the vested

16

rights doctrine is an equitable concept, it is relevant that Covenant did not investigate the zoning status of its property until after closing the purchase of the property. Because Covenant did not reasonably rely on any act or omission by the City of Marietta and did not investigate the zoning status of its property until after closing, it cannot invoke equitable principles to block the City's enforcement of the 2008 Ordinance.[7]

Nor can Covenant contend that it somehow reasonably relied on the illegality of the 2004 Ordinance when it attempted to apply for a permit in February 2006. Even if the 2004 Ordinance is partially invalid, Covenant should have known that the City could always amend its ordinance to comply with the equal terms provision of RLUIPA; and compliance with the equal terms provision does not necessarily translate to a church's right to build in a particular zone. *See Petra Presbyterian Church v. Vill. of Northbrook*, 489 F.3d 846, 849 (7th Cir. 2007) (noting that zoning authority could comply with equal terms provision of RLUIPA by either permitting religious organizations in a particular zone or by forbidding all organizations in that zone). Given that amendment to the 2004 Ordinance was a real possibility

---

[7] Covenant does not argue that it obtained a vested right to a development permit the moment it purchased the property. Nor could it. The purchase of land alone does not, under Georgia law, confer a vested right to development. *See N. Ga. Mountain Crisis Network, Inc. v. City of Blue Ridge*, 546 S.E.2d 850, 853 (Ga. Ct. App. 2001).

17

throughout this litigation, we reject the idea that Covenant reasonably relied on the illegality of the November 2004 Ordinance and thereby acquired immunity from all subsequent zoning regulation.

Further weakening Covenant's vested rights argument is its premise that a property right can vest the moment a district court enters a non-final, interlocutory order declaring an ordinance to be partially invalid. That premise makes little sense because an interlocutory order is subject to reconsideration at any time prior to entry of final judgment. *Harper v. Lawrence Cnty., Ala.*, 592 F.3d 1227, 1231 (11th Cir. 2010); *cf.* Fed. R. Civ. P. 54(b) (providing that interlocutory orders that resolve fewer than all claims "may be revised at any time before the entry of a [final] judgment"). And, the ordinance that the interlocutory order declares to be invalid may not even exist at the time of final judgment, which is precisely what happened in this case. Thus we reject the contention that a vested right under Georgia law permanently arises based on an interlocutory order.[8]

---

[8] None of the cases that Covenant cites stand for the proposition that a property owner acquires a vested right to a development permit by applying for that permit under a partially invalid ordinance that is superseded prior to final judgment. In *Tilley Props., Inc. v. Bartow Cnty.*, 401 S.E.2d 527 (Ga. 1991), the challenged ordinance was never replaced by a subsequent ordinance, so the court did not address vested property rights in the face of a subsequent, new ordinance. *Id.* at 527. In *Crown Media, LLC v. Gwinnett Cnty., Ga*, 380 F.3d 1317 (11th Cir. 2004), the property owner applied for and actually obtained the development permit. So, this court did not address in that case "whether under Georgia law a property owner who never sought a permit for a particular land use acquires vested property rights in that use in the face of a subsequent ordinance precluding that land use." *Id.* at 1328 n.24. Finally, in *Augusta Video, Inc. v. Augusta-Richmond Cnty., Ga.*,

18

## 2. The 2008 Ordinance Fundamentally Changed the 2004 Ordinance

Covenant also argues that its claims for injunctive relief are not moot because the 2008 Ordinance did not remove all unlawful defects in the 2004 Ordinance. We have recognized that "[w]here a superseding statute leaves objectionable features of the prior law substantially undisturbed, the case is not moot." *Naturist Soc., Inc. v. Fillyaw*, 958 F.2d 1515, 1520 (11th Cir. 1992). Accordingly, "a superseding statute or regulation moots a case only to the extent that it removes challenged features of the prior law. To the extent that those features remain in place, and changes in the law have not so fundamentally altered the statutory framework as to render the original controversy a mere abstraction, the case is not moot." *Id.*

---

249 F. App'x 93 (11th Cir. 2007), we never addressed the requirements of Georgia's common law vesting principles because the property owner's pre-existing use was covered by the grandfather clause in the City's ordinance. *Id.* at 99 n.6. Thus, none of these cited cases support Covenant's contention that it acquired a vested right under the circumstances of this case.

We also note that the recent case of *Fulton County v. Action Outdoor Advertising, JV*, __S.E.2d__, Nos. S11A0023, S11A0101, 2011 WL 2305974 (Ga. June 13, 2011), provides no help to *Covenant*. In *Action Outdoor*, the Georgia Supreme Court held that various sign companies obtained vested rights to sign permits because the companies applied for the permits under a sign ordinance that was unconstitutional in its entirety. *Id.* at *2. Because the ordinance was entirely unconstitutional, it was "wholly void and of no force and effect from the date it was enacted." *Id.* at *1. As a result, when those companies filed applications for permits pursuant to that unconstitutional ordinance, "there was no valid restriction on the construction of signs" and thus "the sign companies obtained vested rights upon filing of proper applications." *Id.* at *2. Here, unlike *Action Outdoor*, the 2004 Ordinance is not entirely invalid. Instead, as both parties in this case have recognized, the ordinance is only partially invalid and thus capable of being severed. And, the 2004 Ordinance, as severed, prohibits the building of all places of assembly, both religious and non-religious, in the R-2 residential zone.

19

We conclude that the 2008 Ordinance has fundamentally changed the City's zoning regulations and mooted Covenant's claims for injunctive relief. The 2008 Ordinance makes places of assembly (including religious institutions), private parks, playgrounds, and neighborhood recreation centers special uses permitted upon approval by the City Council. Under the 2004 Ordinance, churches were completely prohibited in residential zones while all of these other uses were permitted. One of the central allegations of Covenant's First Amended Complaint is that the 2004 Ordinance treats religious institutions differently from other similar uses. Under the 2008 Ordinance, religious institutions in R-2 residential zoning classifications are no longer treated differently than the uses that Covenant identifies as similar in the First Amended Complaint. Therefore, we agree with the district court that the 2008 Ordinance "fundamentally altered the statutory framework," *id.*, and thus the claims for injunctive relief concerning the 2004 Ordinance are now moot.

### 3. Voluntary Cessation

Covenant argues that its claims for injunctive relief are not moot because of the possibility that, if no court rules on the ordinance, the City will simply reenact the challenged ordinance at some later date. While the general rule is that repeal of an ordinance renders a legal challenge to that ordinance moot, we have recognized that a defendant's voluntary cessation of an allegedly illegal activity does not always moot

20

a case and deprive federal courts of jurisdiction. "For a defendant's voluntary cessation to moot any legal questions presented and deprive the court of jurisdiction, it must be absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Nat'l Adver. Co. v. City of Miami*, 402 F.3d 1329, 1333 (11th Cir. 2005) (internal quotation marks and citations omitted). "In other words, voluntary cessation of offensive conduct will only moot litigation if it is clear that the defendant has not changed course simply to deprive the court of jurisdiction." *Id.* In evaluating a defendant's conduct, we have recognized that "governmental entities and officials have been given considerably more leeway than private parties in the presumption that they are unlikely to resume illegal activities." *Id.* (quoting *Coral Springs*, 371 F.3d at 1328-29).

We agree with the district court that no evidence suggests that the City is likely to reenact the challenged provisions of the 2004 Ordinance. The record shows that the City passed the 2004 Ordinance in an attempt to comply with RLUIPA after another lawsuit challenged the previous ordinance. After the district court entered an order finding that the 2004 Ordinance violated RLUIPA, the city again amended the ordinance so that all places of assembly, both religious and non-religious, are classified as special uses requiring approval by the City Council. Considering that the City has a history of attempting to comply with the statutory requirements of

21

RLUIPA, no evidence suggests that the 2004 Ordinance will be reenacted after this lawsuit is resolved. This case does not fall within the voluntary cessation exception to the general mootness rule.

Because Covenant has no vested right to a development permit and no exception to the general mootness rule applies, all claims challenging the 2004 Ordinance that seek injunctive relief are moot.

B.      Claims Seeking Damages

Although a case will normally become moot "when a subsequent [ordinance] brings the existing controversy to an end," *CAMP v. City of Atlanta*, 219 F.3d 1301, 1310 (11th Cir. 2000), when the plaintiff has requested damages, those claims are not moot, *Granite State Outdoor Adver., Inc. v. City of Clearwater, Fla.*, 351 F.3d 1112, 1119 (11th Cir. 2003); *see also Crown Media, LLC*, 380 F.3d at (citation omitted). Covenant requests damages as a form of relief for all four RLUIPA claims. Thus we address the merits of these claims.

1.      Substantial Burden, Discrimination, Unreasonable Limit
         (Counts VI, VIII, IX)

The district court concluded that the 2004 Ordinance did not impose a substantial burden on religious exercise in violation of RLUIPA (Count VI) (42 U.S.C. § 2000cc(a)(1)); that the 2004 Ordinance did not discriminate against

22

Covenant on the basis of religion in violation of RLUIPA (Count VIII) (42 U.S.C. § 2000cc(b)(2)); and that the 2004 Ordinance did not unreasonably limit religious assemblies in violation of RLUIPA (Count IX) (42 U.S.C. § 2000cc(b)(3)). The court granted summary judgment in favor of the City on these claims. We may affirm this grant of summary judgment on any ground supported by the record. *Rozar v. Mullis*, 85 F.3d 556, 564 (11th Cir. 1996) (citation omitted).

We need not address each of these RLUIPA claims individually in order to affirm the district court's judgment dismissing these claims. Instead, we affirm the judgment dismissing these claims on the ground that Covenant has failed to produce evidence that it suffered damages as a result of the 2004 Ordinance. In the previous section, we explained that Covenant is not entitled to an injunction allowing it to build its church in the R-2 residential zone because all claims seeking injunctive relief are moot due to passage of the 2008 Ordinance. Because Covenant is not entitled to an injunction allowing it to construct a church in the R-2 residential zone, Covenant cannot recover any damages that stem from the inability to build its church in this zone. And, those damages are the only damages that Covenant has identified in this case. Thus, to the extent that Count VI, Count VIII, and Count IX all seek damages, we conclude that those claims, while not moot, fail on the merits because they seek damages Covenant cannot recover.

2.      Equal Terms
        (Count VII)

The district court concluded that the 2004 Ordinance, on its face, violates the

equal terms provision of RLUIPA, 42 U.S.C. § 2000cc(b)(1).  The court also

concluded, as we have for the other RLUIPA claims, that Covenant has failed to

produce evidence of compensatory damages for the equal terms claim.  The City, in

its cross-appeal, argues that the district court erred in finding that the 2004 Ordinance

facially violates the equal terms provision of RLUIPA and that the court erred in

awarding nominal damages for this claim. We find no error in the district court's

treatment of the equal terms claim and the award of nominal damages.

RLUIPA's equal terms provision states that "[n]o government shall impose or

implement a land use regulation in a manner that treats a religious assembly or

institution on less than equal terms with a nonreligious assembly or institution." 42

U.S.C. § 2000cc(b)(1).  The only issue in this case is whether the 2004 Ordinance

facially differentiates between religious and nonreligious assemblies or institutions.[9]

---

[9]  In *Primera*, 450 F.3d at 1308, we identified three distinct types of RLUIPA equal terms
violations as:

> (1) a statute that facially differentiates between religious and
> nonreligious assemblies or institutions; (2) a facially neutral statute
> that is nevertheless "gerrymandered" to place a burden solely on
> religious, as opposed to nonreligious, assemblies or institutions; or
> (3) a truly neutral statute that is selectively enforced against religious,
> as opposed to nonreligious assemblies or institutions.

In the district court, Covenant argued that the 2004 Ordinance, as applied, violates the equal terms

To state an equal terms violation, a plaintiff has the burden of showing the following elements: "(1) the plaintiff must be a religious assembly or institution, (2) subject to a land use regulation, that (3) treats the religious assembly on less than equal terms, with (4) a nonreligious assembly or institution." *Primera Iglesia Bautista Hispana of Boca Raton, Inc. v. Broward Cnty.*, 450 F.3d 1295, 1307-08 (11th Cir. 2006) (citing 42 U.S.C. § 2000cc(b)(1)). Once the plaintiff produces prima facie evidence supporting an equal terms violation, the government bears the burden of showing the land use regulation passes strict scrutiny–that is, the regulation "employs a narrowly tailored means of achieving a compelling government interest." *Id.* at 1308 (citing *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 546, 113 S. Ct. 2217, 2233 (1993)).

The City first argues that the equal terms claim fails because private parks, playgrounds, and neighborhood recreation centers do not qualify as an "assembly" under RLUIPA, and thus the City can treat these entities differently than religious assemblies without running afoul of RLUIPA. The City reasons that those who attend these places are not assembling for a common purpose because their reasons for visiting differ; some seek exercise, others seek relaxation, and still others seek solitude.

---

provision. Covenant does not challenge on appeal the dismissal of this claim.

We reject the City's argument. Private parks, playgrounds, and neighborhood recreation centers are assemblies within the meaning of RLUIPA because they are places where "groups or individuals dedicated to similar purposes–whether social, education, recreational, or otherwise–can meet together to pursue their interests." *Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214, 1231 (11th Cir. 2004). That some individuals have different purposes for meeting in a particular place does not mean the place fails to qualify as an "assembly" under RLUIPA.

The City next argues that, even if Covenant can state a prima facie violation, the City has met its burden of showing that the 2004 Ordinance passes strict scrutiny. According to the City, the 2004 Ordinance's complete prohibition of religious assemblies in residential areas is a narrowly tailored means of achieving the City's compelling interest in preserving residential neighborhoods and protecting those areas from traffic, crowds, and disruption. We cannot agree that a complete prohibition of religious assemblies in residential zones is a narrowly tailored means of achieving the City's interest in preserving the residential character of neighborhoods. As the district court noted, recreation centers, parks, and playgrounds have similar potential for community disruption, increased traffic, and encroachment into residential neighborhoods, but the 2004 Ordinance permits such uses in residential zones. As a result, the City's proffered interests in protecting residential

26

neighborhoods from traffic, crowds, and disruption are "not pursued against analogous nonreligious conduct, and those interests could be achieved by narrower ordinances that do not improperly distinguish between similar secular and religious assemblies." *Midrash*, 366 F.3d at 1235. The 2004 Ordinance, therefore, does not pass strict scrutiny.

C.      Motion for Leave to Amend

Covenant argues that the district court erred in denying its motion for leave to amend the complaint to include claims relating to the May 2008 Ordinance and May 2008 permit application. The district court denied the motion as untimely. The court found that the motion was untimely because Covenant was on notice regarding the City's failure to process the May 2008 application in June 2008, yet Covenant waited until May 2009 to file its motion.

Covenant argues that the motion was not untimely because it had good reason for the almost-year-long delay. According to Covenant, it waited to file the motion because it was waiting for the district court to rule on its motion for final judgment pursuant to Rule 54(b), which Covenant filed on August 25, 2008. Covenant's Rule 54(b) motion asked the court to enter final judgment on Covenant's claim that the 2004 Ordinance violates the equal terms provision of RLUIPA. Once the district

court denied the Rule 54(b) motion in April 2009, Covenant moved to amend shortly thereafter.

The district court did not abuse its discretion in denying Covenant's motion to amend the complaint. Covenant waited until the district court's Rule 54(b) decision to seek leave to amend the complaint. By doing so, Covenant assumed that the district court would grant its Rule 54(b) motion, enter final judgment on its equal terms RLUIPA claim, and order the City to allow Covenant to build a church on its property. Covenant's assumptions turned out to be incorrect. And these incorrect assumptions do not justify Covenant's delay in moving for leave to amend the complaint to include different claims based on a different ordinance and permit application. The denial of Covenant's motion was not an abuse of discretion.

## V. CONCLUSION

The claims seeking injunctive relief are moot in light of passage of the 2008 Ordinance. To the extent any claim in this case seeks injunctive relief, we dismiss those claims for lack of subject matter jurisdiction.

To the extent the RLUIPA claims in Counts VI, VIII, and IX seek damages, they fail on the merits because all damages stem from Covenant's inability to build a church in the R-2 residential zone, and Covenant is not entitled to build a church in that zone. We affirm the district court's judgment dismissing these claims.

28

The district court did not err in concluding that the 2004 Ordinance facially violates the equal terms provision of RLUIPA (Count VII) and did not err in awarding nominal damages for this claim. We affirm the final judgment in favor of Covenant on this claim and the nominal damages award of $1.

The district court did not abuse its discretion in denying Covenant's motion for leave to amend the complaint.

CLAIMS FOR INJUNCTIVE RELIEF DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION; IN ALL OTHER RESPECTS THE JUDGMENT OF THE DISTRICT COURT IS AFFIRMED.