[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-12962
Non-Argument Calendar
_____

D.C. Docket No. 5:12-cv-00018-MTT

TAMMY WELLS,

Plaintiff-Appellant,

versus

GENERAL DYNAMICS INFORMATION TECHNOLOGY INC,
f.k.a. Anteon Corporation,
MICHAEL RAGLAND,
Mike, et al.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Georgia
_____

(July 1, 2014)

Before WILSON, MARTIN, and ANDERSON, Circuit Judges.

PER CURIAM:

Tammy Wells, an African-American former employee of General Dynamics Information Technology, Inc. (GDIT), brought a civil action against GDIT and four GDIT employees.  In addition to the company, she sued her supervisor, Michael Ragland, and three coworkers, Elizabeth Lines, Tabitha Waldrop, and Gwendolyn Krind (collectively, defendants).  On appeal, Wells, proceeding pro se, challenges (1) the district court's grant of the defendants' motion for an extension of time to file their statement of undisputed material facts with their summary judgment motion; (2) the district court's denial of her motion for leave to amend her complaint; and (3) the district court's grant of the defendants' motion for summary judgment on her claims of race-based harassment and retaliation under Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981, and her identity-theft claim under state law.  After review, we affirm.

I.

Wells first argues that the district court improperly allowed the defendants to file their required statement of undisputed material facts three days after filing their motion for summary judgment.[1]  District courts have the power to manage their own dockets and we review a district court's exercise of that power only for abuse of discretion.  See Young v. City of Palm Bay, Fla., 358 F.3d 859, 863–64 (11th

---

[1] The local rules for the Middle District of Georgia require that a movant for summary judgment attach "a separate and concise statement of the material facts to which the movant contends there is no genuine issue to be tried."  M.D. Ga. L.R. 56.

Cir. 2004). We will not reverse a district court's decision where the error is harmless, meaning the complaining party's substantial rights were not affected by the error. Fed. R. Civ. P. 61.

Here, any potential error by the district court in allowing the defendants to file a statement of undisputed material facts three days after the filing deadline was harmless. Wells offers no evidence of how the three-day delay affected her ability to respond to defendants' motion for summary judgment. This lack of prejudice is further supported by the fact that she had more than 50 additional days after defendants' belated filing to file her opposition to summary judgment. Beyond the short delay, the defendants' timely-filed summary judgment motion contained almost the same facts, along with citations to the record, as were listed in the statement of undisputed material facts filed a mere three days later. As a result, the untimely statement did not contain new or surprising information to which Wells had to respond. Given these circumstances, the district court did not abuse its discretion by permitting the late filing of defendants' statement of material facts.

## II.

Wells next argues that the district court abused its discretion by denying her motion to amend her complaint as both untimely and prejudicial to the defendants. We review for abuse of discretion the denial of a motion for leave to amend a

3

complaint.  Covenant Christian Ministries, Inc. v. City of Marietta, Ga., 654 F.3d 1231, 1239 (11th Cir. 2011).

Under Fed. R. Civ. P. 15(a)(1), a party may amend its pleading once as a matter of course within 21 days after serving it or 21 days after service of any responsive pleading or motion under Rule 12(b), (e), or (f).  After that, a party may amend its pleading "only with the opposing party's written consent or the court's leave."  Fed. R. Civ. P. 15(a)(2).  Despite the general rule that leave to amend should be given freely, the court may deny leave to amend based on undue delay and undue prejudice to the defendants.  See Maynard v. Bd. of Regents of Div. of Univs. of Fla. Dep't of Educ. Ex rel. Univ. of S. Fla., 342 F.3d 1281, 1287 (11th Cir. 2003).

Once the district court sets a deadline for amending the pleadings pursuant to Federal Rule of Civil Procedure 16(b)(3)(A), a party must demonstrate good cause for seeking leave to amend its complaint after that deadline.  S. Grouts & Mortars, Inc. v. 3M Co., 575 F.3d 1235, 1241 (11th Cir. 2009); Fed. R. Civ. P. 16(b)(4).  A lack of diligence in pursuing a claim is sufficient to establish a lack of good cause under Rule 16.  S. Grouts & Mortars, 575 F.3d at 1241.

Because Wells did not demonstrate good cause for her belated motion to amend, the district court did not err by denying it.  Wells filed her motion in October 2012, which was more than two years after she filed her initial complaint

4

and months past the district court's deadline for amending pleadings. Beyond that, discovery, which had been extended several times, had closed the day before Wells filed her motion to amend. Wells also concedes that at least one of her claims could have been brought earlier. Although Wells may have had good cause for previous extensions due to losing her attorneys, as well as personal and family medical issues, her motion to amend still came years after this litigation began and after the close of discovery. Under these circumstances, it was not an abuse of discretion for the district court to deny Wells's motion to amend her complaint.

III.

Wells also challenges the district court's grant of summary judgment on her claims of discrimination, retaliation, and identity theft. We review de novo a district court's grant of summary judgment. Brooks v. Cnty. Comm'n of Jefferson Cnty., Ala., 446 F.3d 1160, 1161–62 (11th Cir. 2006). When reviewing the record, we consider all evidence, along with any reasonable factual inferences, in a light most favorable to the non-moving party. Crawford v. Carroll, 529 F.3d 961, 964 (11th Cir. 2008). The moving party has the initial burden of demonstrating the absence of a genuine issue of material fact. Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997). However, once it has met this burden, the burden shifts to the nonmoving party to present affirmative evidence of a genuine issue for trial.

5

Id.  Overcoming that burden requires more than speculation.  Shiver v. Chertoff, 549 F.3d 1342, 1343 (11th Cir. 2008).

### A.

Wells argues that the district court erred in granting the defendants' motion for summary judgment as to her discrimination and hostile-work-environment claims under Title VII and § 1981, because she provided evidence that (1) GDIT did not provide her with a security clearance, as it did for all new white employees; (2) she endured public ridicule and berating by Ragland, her manager; and (3) the GDIT human resources department had considered the hostile work environment to be so severe that it sent representatives from Virginia to Georgia to hold a special meeting on the issue and eventually arranged for her to work from home.

To establish a hostile-work-environment claim, a plaintiff must show: (1) that she belongs to a protected group; (2) that she was subjected to unwelcome harassment; (3) that the harassment was based on her membership in the protected group; (4) that the harassment was severe or pervasive enough to alter the terms and conditions of employment and create a hostile or abusive working environment; and (5) that the employer is directly or vicariously responsible for such environment.  Jones v. UPS Ground Freight, 683 F.3d 1283, 1292 (11th Cir.

6

2012). [2] To be actionable, a hostile work environment must be both objectively and subjectively offensive. See id. at 1299. In evaluating the objective severity of the harassment, a court will consider: (1) the frequency of the conduct; (2) its severity; (3) whether it was physically threatening or humiliating, or "a mere offensive utterance"; and (4) whether it unreasonably interfered with the employee's work performance. Id.

We affirm the district court's grant of summary judgment on Wells's hostile-work-environment claims because she has not demonstrated a material dispute of fact on two of the required elements: (1) that the harassment was based on her membership in the protected group and (2) that the harassment was severe or pervasive enough to alter the terms and conditions of her employment. On appeal, Wells directs us to three events, which neither individually, nor collectively, establish these two required elements.

First, Wells argues that her application for security clearance was delayed while new white employees received their clearance right away. But she did not offer an evidence that the lack of security clearance altered the terms and conditions of her employment by interfering with her ability to perform her work or preventing her from receiving an assignment or promotion.

---

[2] We use the same standards of proof and the same analytical framework to analyze hostile-work-environment claims under § 1981 as we use for claims under Title VII. Bryant v. Jones, 575 F.3d 1281, 1296 n.20 (11th Cir. 2009).

Wells next points us to a single example of her supervisor berating her in front of other employees after she sent him an email.  But she does not show, beyond speculation, how this harassment was based on her race or how it altered the terms and conditions of her employment.

Lastly, Wells argues that the fact that two GDIT employees from Virginia made a special trip to Warner Robins to investigate what was going on and arranged for Wells to work from home is evidence of a hostile work environment.  The record shows these employees came down because of Wells's ethics complaint accusing her co-workers of identity theft, and her concerns about her safety and belief that her supervisor, Ragland, wanted to terminate her.  But again, Wells does not offer any evidence that any of this conflict was based on her race as opposed to merely being interpersonal disputes stemming from her identity theft accusations and her deteriorating relationship with her supervisor.

Because Wells has not shown a material dispute of fact on two required elements of her hostile-work-environment claims, we affirm the grant of summary judgment on these counts.

### B.

Next, Wells contends that the district court improperly granted summary judgment as to her retaliation claims.  Both Title VII and § 1981 prohibit employers from retaliating against a person because she has opposed any practice

prohibited by Title VII or made a charge of discrimination.  See 42 U.S.C. § 2000e-3(a).  To establish a claim of retaliation under Title VII or § 1981, a plaintiff must prove that she engaged in statutorily protected activity, she suffered a materially adverse action, and there was some causal relation between the two events.  Butler v. Ala. Dep't of Transp., 536 F.3d 1209, 1212–13 (11th Cir. 2008); see also 42 U.S.C. § 2000e-3(a).  The adverse actions "must be harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination."  Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 57, 126 S. Ct. 2405, 2409 (2006).

On appeal Wells argues the following evidence supports her retaliation claims:  (1) GDIT's cancellation of her medical insurance eight days after she filed an EEOC complaint; (2) GDIT's insistence that she relocate; and (3) Ragland's cumulative actions against her, including cutting her off from resources needed to perform her work, excluding her from meetings, and failing to credit her for work she performed.  Our review of the record evidence surrounding these events shows that they do not rise to the level of a materially adverse action required for a retaliation claim under Title VII or § 1981.

First, as noted by the district court, Wells's medical insurance was cancelled at a time when her employment status with GDIT was in flux because she was on leave.  Wells herself notes the insurance was retroactively reinstated.  Second, the

9

record does not show that GDIT forced Wells to relocate or be fired.  She was offered the opportunity to relocate because of the tension in the Warner Robins office and so that she could be closer to her husband.  Lastly, as to Ragland's actions against her, Wells fails to offer enough specifics about his actions to demonstrate that they were materially adverse actions "harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination."  Burlington N. & Santa Fe Ry. Co., 548 U.S. at 57, 126 S. Ct. at 2409.  Because Wells has not offered evidence of a materially adverse action, we affirm the district court's grant of summary judgment on her retaliation claims.

## C.

Finally, Wells contends that the district court erred by granting summary judgment as to her state law claim of identity theft, arguing that the district court failed to make the reasonable inference, based on the evidence that she presented, that her coworkers were responsible for identity theft committed against her. Under Georgia law, "[a]ny consumer victim who suffers injury or damages as a result of a violation" of Georgia's identity-theft statute may bring a civil action against the perpetrator of the identity theft.  O.C.G.A. § 16-9-130(a).  The statute makes it an offense to willfully and fraudulently use a person's identifying information without the person's consent.  O.C.G.A. § 16-9-121(a)(1).

In this case, Wells pointed to no evidence creating a reasonable inference that Lines, Waldrop, and Krind willfully and fraudulently used her identifying information.  First, Wells makes no argument about Waldrop on appeal.  Second, as to Lines, Wells relies heavily on the fact that Lines, an administrative assistant at GDIT, had access to her personal information, such as her employment application and a cancelled check requested to set up direct deposit.  But beyond that, Wells offers no evidence that Lines used this information.  Lastly, as to Krind, Wells only offers evidence of a surveillance video of someone using Wells's identity at a store, but even Wells herself cannot conclusively say the video shows Krind.  The detective investigating the case also disqualified Krind as a suspect even after reviewing the video.  Wells's remaining evidence is only speculation that the type of information used in the identity theft may have come from an employment application and that GDIT asked Lines to destroy any personal employee information she had in her desk, rather than give it to the police.  This speculative evidence does not create a genuine issue of material fact as to whether Lines, Waldrop, or Krind committed identity theft.

## IV.

Upon review of the record on appeal and after consideration of the parties' appellate briefs, we **AFFIRM.**

11