[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 13-15168
Non-Argument Calendar

_____

D.C. Docket No. 2:12-cv-01753-WMA

CHARLETTE SWANN JACKSON,

Plaintiff-Appellant,

versus

UNITED PARCEL SERVICE, INC.,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(November 20, 2014)

Before MARCUS, KRAVITCH and ANDERSON, Circuit Judges.

PER CURIAM:

Charlette Swann Jackson appeals from the district court's grant of summary

judgment to United Parcel Service, Inc. (UPS) on her claims of gender and race

discrimination and retaliation under Title VII and 42 U.S.C. § 1981, and its denial of her post-judgment motion to amend her complaint. After a thorough review of the record, we affirm.

## I.

Jackson began working for UPS in 1992, as a part-time unloader. Eventually, she became a full-time package car driver, a position she has held for the last fifteen years. UPS utilizes a specific process for promotions called Management Assessment and Promotion Process (MAPP). The first step requires the employee submit an annual written letter of interest. Once submitted, the letter remains effective until December 31 of that year. If the employee wishes to be considered for promotions in subsequent years, he or she must re-submit an annual letter. The remaining MAPP steps need only be completed once, after which the employee is eligible to be included in the pool of applicants for promotions.

From at least 2008, Jackson submitted her letter of interest annually, but she was never selected for a promotion. In 2009, Jackson was interviewed for an on-road supervisor position, but UPS selected Wendy Whitlow over Jackson.[1] In November 2009, Jackson filed a grievance against division manager Jamie Diaz in connection with a pay discrepancy. A few weeks later, Jackson approached Diaz to discuss a morale issue and, as she reached out to shake his hand, Diaz struck her

---

[1] Jackson concedes that the denial of a promotion in 2009 is not actionable.

2

arm.  In February 2010, Jackson filed a complaint with human resources.  Diaz was transferred to another UPS facility, and he and Jackson had no further contact.[2]  Jackson filed a charge with the EEOC on April 15, 2010.

On January 17, 2011, Jackson submitted her annual letter of interest for any upcoming promotions.  There was an opening that same month, but Brian Tillman was selected for the position because Jackson had not submitted her letter of interest until after the pool of applicants had been selected.  On February 7, 2011, Jackson filed a second charge with the EEOC, alleging race and gender discrimination and retaliation arising out of this promotion.

In July 2011, Jackson was listed in the pool of applicants for another promotion, but UPS selected Doug Hutcheson.  Hutcheson had a better safety and on-time delivery record than Jackson.  The following month, Jackson again was denied a promotion.  UPS selected Walter Graham for the position because he did not work in the same facility.[3]  Stan Garrett, the manager who made the selection, explained that he preferred to promote from other locations because it was often difficult for a manager to oversee his or her former co-workers, and it could cause morale problems.

---

[2]  Jackson apparently filed an incident report with the police.  Diaz was arrested, but the charges were dropped.

[3]  Jackson stated in her deposition that she was not interviewed for either the July or August promotions.  UPS disputes this, and the two managers responsible for promoting Hutcheson and Graham both stated in their depositions that they had interviewed Jackson.

Jackson filed a complaint against UPS on May 2, 2012, alleging gender discrimination and retaliation under Title VII, and race discrimination under 42 U.S.C. § 1981. Specifically, although the complaint referenced "promotions" in the plural, it identified only the January 2011 promotion as the discriminatory act. The complaint made no mention of the July and August 2011 promotions and contained no facts relevant to these promotions. Following discovery, UPS moved for summary judgment, which the district court granted. The district court found that the July and August promotions were not properly before the court because, not only had these incidents been excluded from any EEOC charge, Jackson also failed to allege any facts regarding these promotions in her complaint. The court further found that Jackson's arguments in her response to the summary judgment motion were improper to amend her complaint. The court further rejected any § 1981 claims because Jackson made no mention of the statute in her response to the summary judgment motion and cited only Title VII cases.

Addressing the merits of the remaining claims regarding the January 2011 promotion, the court found that Jackson had not shown that UPS's explanations for promoting Tillman were a pretext for discrimination in light of Jackson's failure to submit her letter of interest in time to be included in the pool of applicants. The court further rejected Jackson's "me too" evidence of other complaints filed against UPS because the evidence was not relevant to the January 2011 promotion.

4

Addressing Jackson's retaliation claim, the court found that Jackson failed to establish any causal connection between her EEOC charge in April 2010 and the denial of the promotion in January 2011.  The court noted that there was no evidence Garrett knew of Jackson's complaint when he made the promotion decision, and Jackson's argument that he had to have known was insufficient.

Jackson filed a post-judgment motion to amend the complaint to add the July and August 2011 promotion decisions.  She noted that she had not acted in bad faith, and there was no prejudice to UPS because the parties' discovery addressed these promotions.  She also filed a motion to reconsider and amend judgment with respect to the grant of summary judgment.  The court denied both motions.  This is Jackson's appeal.

## II.

Jackson argues that the district court erred by dismissing her claims as to the July and August 2011 promotions because her complaint referred to "promotions" in the plural, and discovery included those promotions.  She further asserts that the court erred by concluding that she abandoned her § 1981 claims, as she pursued them simultaneously to her Title VII claims, which shared the same requirements of proof and analytical framework.  Finally, Jackson argues that the court erred by granting summary judgment to UPS related to the January 2011 promotion because (1) she established that UPS's proffered reason for not promoting her, the alleged

5

untimeliness of her letter of interest, was pretextual; and (2) she established causation based on temporal proximity between her April 2010 EEOC charge and the denial of that promotion.

We review the denial of summary judgment *de novo*. *Rioux v. City of Atlanta, Ga.*, 520 F.3d 1269, 1274 (11th Cir. 2008). We review the denial of a motion for leave to amend a complaint for abuse of discretion. *Covenant Christian Ministries, Inc. v. City of Marietta, Ga.*, 654 F.3d 1231, 1239 (11th Cir. 2011). A district court's decision will not be disturbed on abuse-of-discretion review if its decision falls within a range of permissible choices and it is not influenced by a mistake of law. *Zocaras v. Castro*, 465 F.3d 479, 483 (11th Cir. 2006).

## III.

A. Post-judgment motion to amend

Generally, unless otherwise specified, a party may amend its pleading "only with the opposing party's written consent or the court's leave," and "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). But, in civil cases, a district court must issue a scheduling order in which it limits the time to amend the pleadings, Fed. R. Civ. P. 16(b)(3)(A), and once a scheduling order is entered, a party must demonstrate good cause for seeking leave to amend its complaint after the deadline, *S. Grouts & Mortars, Inc. v. 3M Co.*, 575 F.3d 1235, 1241 (11th Cir. 2009). *See also* Fed. R. Civ. P. 16(b)(4) (allowing for

modification of a schedule "only for good cause and with the judge's consent").  A lack of diligence in pursuing a claim will generally negate a showing of good cause.  *See S. Grouts & Mortars, Inc.*, 575 F.3d at 1241.

Here, the district court did not err by declining to consider Jackson's claims as to the July and August 2011 promotions.  First, Jackson filed her complaint in May 2012, but did not seek leave to amend until October 22, 2013.  Jackson has been represented by counsel.  These acts occurred almost a year before she filed the complaint and well before the expiration of the court's scheduling order and the close of discovery.   She has offered nothing to show good cause for seeking to amend at this stage.

Jackson claims that UPS would not be prejudiced because they already had conducted discovery and briefed the issues.  Although this may be the case, it is not relevant to her failure to show good cause.  On these facts, the district court did not abuse its discretion by denying the motion to amend the complaint, and we see no basis to disturb the court's ruling.[4]

B.  § 1981 claims

---

[4]  We further note that the district court could not grant the motion to amend the complaint unless and until it granted the motion to alter or amend judgment.  Jackson makes no argument as to the court's error in denying the motion to alter or amend judgment and thus has abandoned it. *Holland v. Gee*, 677 F.3d 1047, 1066 (11th Cir. 2012) (explaining that issues not raised in the initial brief are abandoned).

Jackson next argues that the court erred by dismissing her § 1981 claims because the court routinely analyzes Title VII and § 1981 under the same standards.

We need not determine whether the district court erred because any error would be harmless.  As Jackson notes, the standards applicable to Title VII and § 1981 are the same.[5] *Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 975 n.46 (11th Cir. 2008).  Thus, Jackson's failure to survive summary judgment under Title VII is also fatal to her § 1981 claim, and the district court properly dismissed this claim.  *See Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007) (We may affirm on any ground supported by the record, even if that ground was not considered or relied on by the district court).

C.  Discrimination under Title VII

Summary judgment should be granted where there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  We view all the evidence and all factual inferences reasonably drawn from the evidence in the light most favorable to the nonmoving party, and resolve all reasonable doubts about the facts in favor of the non-movant.  *Rioux*, 520 F.3d at 1274.

---

[5]  The only significant difference here is that § 1981 has no exhaustion requirement.  But, because UPS did not argue that Jackson failed to exhaust any of her claims, and the court did not dismiss any claims on this basis, the difference is not relevant to our analysis.

Title VII prohibits an employer from discharging any individual, or otherwise discriminating against any individual with respect to her compensation, terms, conditions, or privileges of employment, because of her race or sex.  42 U.S.C. § 2000e-2(a)(1).  If the plaintiff establishes a *prima facie* case of discrimination, and the defendant provides a legitimate, non-discriminatory reason for the plaintiff's termination, the burden then shifts to the plaintiff to show that the defendant's reason was a pretext for discrimination.  *Crawford v. Carroll*, 529 F.3d 961, 976 (11th Cir. 2008).  In order to show pretext, a plaintiff must meet each proffered reason "head on," and cannot succeed by simply disputing the wisdom of the employer's proffered reason.  *Chapman v. AI Transport*, 229 F.3d 1012, 1030 (11th Cir. 2000) (*en banc*).  A plaintiff can demonstrate pretext either directly, by persuading the court that a discriminatory reason more likely motivated the employer, or indirectly by showing "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence."  *Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1265 (11th Cir. 2010) (citation omitted).

Here, the court properly granted summary judgment to UPS as to Jackson's discrimination claim related to the January 2011 promotion because Jackson failed to demonstrate that UPS's proffered reason for not promoting her, the untimeliness

9

of her application, was pretextual.  UPS's requisition form reflected that the selection was made before Jackson submitted her letter of interest.  Moreover, the evidence submitted by UPS showed that several other employees submitted untimely letters of interest and those employees were excluded from the applicant pool as well.

To the extent that Jackson contends her December 2010 paperwork, which UPS allegedly lost to keep her out of the applicant pool, was intended to serve as qualification for the January 2011 promotion, we disagree.  The undisputed evidence showed that letters of interest were required to be re-submitted yearly and expired on December 31 of each year.  Jackson has offered nothing that would persuade the court that UPS's reason was so implausible and inconsistent as to be unworthy of belief.

Jackson argues that the court should have considered the other evidence of discrimination and retaliation aimed at her co-workers because this "me too" evidence proved UPS's intent to discriminate.  We disagree.  Although we have generally approved of the use of "me too" evidence under Fed. R. Evid. 404(b), *Goldsmith v. Bagby Elevator Co.*, 513 F.3d 1261, 1285 (11th Cir. 2008), none of the "me too" evidence Jackson submitted was relevant to show Garrett's motive, intent, or knowledge, Fed. R. Civ. P. 404(b).  In fact, most of it related to claims of discrimination and harassment by Diaz.  As Jackson concedes, any claim she had

10

concerning Diaz's conduct was untimely and thus not part of her complaint. None of the evidence was likely to show that Garrett intended to deny Jackson a promotion based on her gender, or that Garrett knew of Jackson's complaints. Rather, contrary to Jackson's argument, the "me too" evidence showed that Garrett was aware of EEOC complaints filed by a different employee. Thus, as the district court properly found, the evidence was not relevant to Jackson's claims of discrimination. *Adams v. Austal, U.S.A., LLC*, 754 F.3d 1240, 1258 (11th Cir. 2014).

Even if the court had considered this "me too" evidence, summary judgment was nevertheless proper. As previously noted, none of the evidence rebutted UPS's legitimate non-discriminatory reason for not promoting Jackson, as none of it addresses Jackson's failure to comply with the MAPP requirement of submitting her letter of interest prior to being included in the applicant pool. As it is undisputed that Jackson did not submit her letter until after the applicant pool was selected, and other employees whose letters were untimely were also excluded from the pool, the evidence would not have precluded summary judgment.

D. Retaliation under Title VII

Title VII prohibits employers from retaliating against an employee because she made a charge under the Act. 42 U.S.C. § 2000e-3(a). To establish a *prima facie* case of retaliation, a plaintiff must show that (1) she engaged in a statutorily

11

protected activity, (2) she suffered a materially adverse action, and (3) there was a causal link between the protected activity and the adverse action. *Bagby Elevator Co., Inc.*, 513 F.3d at 1277. If a plaintiff establishes a *prima facie* case, the burden shifts to the defendant to produce a legitimate, non-retaliatory reason for the adverse action. *Id.* The plaintiff has the ultimate burden to prove retaliation and that the employer's reason was pretextual. *Id.*

To establish a causal connection, a plaintiff must demonstrate that the motive to retaliate was the "but-for" cause of the adverse employment action. *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. ——, ——, 133 S.Ct. 2517, 2533 (2013). A plaintiff also may establish causation by showing that the decision-makers were "aware of the protected conduct, and that the protected activity and the adverse action were not wholly unrelated." *McCann v. Tillman*, 526 F.3d 1370, 1376 (11th Cir. 2008) (quotations omitted). A plaintiff may do this by demonstrating that there was close temporal proximity between the two events. *Thomas*, 506 F.3d at 1364. A delay of three to four months is too long, as a matter of law, to prove causation. *Id.*; *see also Maniccia v. Brown*, 171 F.3d 1364, 1370 (11th Cir.1999) (concluding that "[t]he more than 15–month period that elapsed between Appellant's grievance and the alleged adverse employment actions belies her assertion that the former caused the latter").

12

Here, the district court properly granted summary judgment to UPS as to Jackson's retaliation claim because she did not establish causation between her April 2010 EEOC charge against UPS and its decision to deny her the January 2011 promotion.  The nine-month gap between the two was too far removed to infer decision-maker Stan Garrett's awareness of Jackson's EEOC charge. Further, Jackson offered no evidence contradicting Garrett's testimony that he was unaware of the 2010 EEOC charge, and Jackson's testimony that he had to have known is insufficient to overcome UPS's evidence.

IV.

For the foregoing reasons, the district court's order granting summary judgment is affirmed.

**AFFIRMED.**