[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-11152
Non-Argument Calendar
_____

D.C. Docket No. 1:14-cv-02728-MHC

CARL A. ROBERTSON,

Plaintiff-Appellant,

versus

INTERACTIVE COLLEGE OF
TECHNOLOGY/INTERACTIVE LEARNING
SYSTEMS, INC.,
a Georgia for Profit College,
ELMER SMITH,
individually and in his capacity as
Owner and Campus President,
THOMAS BLAIR,
individually and in his capacity as Vice
President/Dean of College,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(July 16, 2018)

Before MARCUS, HULL and JULIE CARNES, Circuit Judges.

PER CURIAM:

Carl Robertson, Sr., proceeding pro se, appeals the district court's denial of his motion for leave file an amended complaint and grant of summary judgment to his former employer, the Interactive College of Technology ("ICT"), on his race discrimination and retaliation claims, raised pursuant to Titles VI and VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000d et seq. and 2000e et seq., the Lilly Ledbetter Fair Pay Act of 2009, Pub. L. No. 111-2, 123 Stat. 5 (2009), and 42 U.S.C. § 1981. On appeal, he argues that the district court erred when it: (1) denied him leave to file a proposed amended complaint; (2) refused to consider certain evidence on summary judgment; (3) granted summary judgment against him on his wage discrimination claim, his race discrimination claim, and his retaliation claims; and (4) concluded that he did not have standing to bring a Title VI claim on behalf of a student. After thorough review, we affirm.[1]

We review the denial of a motion for leave to amend a complaint for abuse of discretion. Covenant Christian Ministries, Inc. v. City of Marietta, 654 F.3d 1231, 1239 (11th Cir. 2011). Likewise, we review the decision of a district court to enforce its pre-trial scheduling order for abuse of discretion. Sosa v. Airprint

---

[1]    Robertson did not raise any arguments in his initial brief about the district court's denial of his § 1981 claims against all the defendants. Accordingly, he has abandoned all issues related to those claims on appeal. See United States v. Jernigan, 341 F.3d 1273, 1283 n.8 (11th Cir. 2003) (holding that a party abandons all issues on appeal that he does not plainly and prominently raise in his initial brief).

Sys., Inc., 133 F.3d 1417, 1418 (11th Cir. 1998).  A district court's decision will not be disturbed on abuse-of-discretion review if it falls within a range of permissible choices, and is not influenced by a mistake of law.  Zocaras v. Castro, 465 F.3d 479, 483 (11th Cir. 2006).  We also review a ruling on the admissibility of evidence for abuse of discretion, and we will not overturn an evidentiary ruling unless the moving party establishes a substantial prejudicial effect.  Goldsmith v. Bagby Elevator Co., 513 F.3d 1261, 1276 (11th Cir. 2008).

We review standing determinations de novo.  Bochese v. Town of Ponce Inlet, 405 F.3d 964, 975 (11th Cir. 2005).  We also review de novo a district court's grant of summary judgment, drawing all reasonable inferences in the light most favorable to the non-moving party.  Quigg v. Thomas Cty. Sch. Dist., 814 F.3d 1227, 1235 (11th Cir. 2016).  Summary judgment is proper only when the movant has shown that no genuine dispute of material fact exists, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).  To survive a motion for summary judgment, the plaintiff must have produced sufficient evidence to allow a reasonable jury to conclude that he is entitled to a verdict in his favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).  "The mere existence of a scintilla of evidence in support of the plaintiff's position" and conclusory allegations are insufficient to defeat a motion for summary judgment. Id.; Fullman v. Graddick, 739 F.2d 553, 557 (11th Cir. 1984).

3

First, we are unpersuaded by Robertson's claim that the district court abused its discretion by denying him leave to file an amended complaint and attachments as futile and out-of-compliance with court deadlines. Unless otherwise specified, a party may amend its pleading "only with the opposing party's written consent or the court's leave," though "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). However, the court may deny leave to amend due to undue delay. Maynard v. Bd. of Regents of Div. of Univs. of Fla. Dep't of Educ. ex rel. Univ. of S. Fla., 342 F.3d 1281, 1287 (11th Cir. 2003).

A district court in a civil action shall issue a scheduling order in which it must limit the time to amend the pleadings. Fed. R. Civ. P. 16(b)(3)(A). Once a scheduling order is entered, a party must demonstrate good cause for seeking leave to amend its complaint after the deadline. S. Grouts & Mortars, Inc. v. 3M Co., 575 F.3d 1235, 1241 (11th Cir. 2009); Fed. R. Civ. P. 16(b)(4). A lack of diligence in pursuing a claim is sufficient to show a lack of good cause. S. Grouts & Mortars, 575 F.3d at 1241. Similarly, a relevant factor in concluding that a court did not abuse its discretion in denying leave to amend is that "the information supporting the proposed amendment to the complaint was available to [the plaintiff] even before [he] filed suit." Sosa, 133 F.3d at 1419.

Here, the district court did not abuse its discretion in denying Robertson's motion to amend. As the record reveals, Robertson's motion to amend was

4

untimely -- Robertson filed his motion to amend on March 10, 2016, which was after the deadlines both in the defendants' joint preliminary report and discovery plan, as well as in Robertson's separate joint preliminary report and discovery plan. He was, therefore, required to show good cause for an amendment after the deadlines and he failed to do so. Not only did he not mention good cause, or the appropriate rule -- Fed. R. Civ. P. 16(b) -- but he did not allege due diligence in attempting to obtain the information in his amended complaint, even though it appears that the facts with which Robertson wished to amend his complaint were known to him at the time he filed his initial complaint. See Sosa, 133 F.3d at 1419. As Robertson explained in his motion to amend, he was not seeking "to add facts, but to provide clarity and more details to facts already alleged." On this record, the district court did not abuse its discretion in denying Robertson leave to amend.

We are also unconvinced by Robertson's claim that the district court erred by not considering certain hearsay testimony and unauthenticated documentary evidence on summary judgment. Rule 56 permits a proper summary judgment motion to be opposed by evidentiary materials listed in Rule 56(c), including depositions, documents, electronically stored information, affidavits, and other materials. Fed. R. Civ. P. 56(c)(1)(a). In turn, Rule 56(c)(2) provides that a "party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). The

Rule further provides that an affidavit used to support or oppose a summary judgment motion must be made on personal knowledge, set out facts that would be admissible evidence, and show that the affiant is competent to testify on the stated matters. Fed. R. Civ. P. 56(c)(4).

"On motions for summary judgment, we may consider only that evidence which can be reduced to an admissible form." Rowell v. BellSouth Corp., 433 F.3d 794, 800 (11th Cir. 2005); see Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986) (explaining that the nonmovant need not produce evidence at the summary judgment stage "in a form that would be admissible at trial in order to avoid summary judgment"). Hearsay -- an out-of-court statement offered for the truth of the matter asserted -- is generally not admissible as evidence at trial. See Fed. R. Evid. 801(c), 802. So, while inadmissible hearsay typically cannot be considered on summary judgment, Macuba v. Deboer, 193 F.3d 1316, 1322 (11th Cir. 1999), "a district court may consider a hearsay statement in passing on a motion for summary judgment if the statement could be reduced to admissible evidence at trial or reduced to admissible form," Jones v. UPS Ground Freight, 683 F.3d 1283, 1293–94 (11th Cir. 2012) (quotations omitted). However, the mere possibility that unknown witnesses will emerge to provide testimony is insufficient to establish that a hearsay statement could become admissible at trial. Id. at 1294. We've also explained that if evidence otherwise inadmissible provoked no timely objection, it

could and, if material, should be factored into a summary judgment decision. Offshore Aviation v. Transcon Lines, Inc., 831 F.2d 1013, 1016 (11th Cir. 1987).

The district court did not abuse its discretion in excluding certain evidence in this case. One piece of evidence Robertson sought to admit was the testimony of his wife, Carolyn Robertson, to rebut the argument that Robertson had been fired for not calling his direct supervisor when he was out sick. Specifically, Ms. Robertson testified in her affidavit that: "Sometime around October 2014, I had a conversation with Mr. Victor Ramirez, about his being removed from his office of several years by Elmer Smith and Thomas Blair, of what Victor said was due to a no-call, no-show of three days and not calling his direct supervisor or anyone else at the I.C.T. facility informing of his absence." However, the testimony relaying what Ramirez told Ms. Robertson about his absences and termination constitutes hearsay, because Ramirez's statement is being used to prove the truth of the matter asserted. See Fed. R. Evid. 801. Moreover, nothing in the record indicates that Ramirez or anyone else with personal knowledge of the incident was going to testify at trial so as to reduce the hearsay testimony into an admissible form. See Jones, 683 F.3d at 1293-94. The district court properly excluded this testimony.

Robertson also claims that the district court improperly excluded a large amount of documentary evidence. But even assuming the district court erred in sua sponte excluding this evidence, we cannot say the error prejudiced Robertson.

7

As we detail below, the defendants would still be entitled to summary judgment on all of the claims, even considering the excluded materials that Robertson discusses in his brief. Since the error, if any, was harmless, we affirm on this issue as well.

Turning to the summary judgment rulings, we find no merit to Robertson's claim that the district court erred in granting summary judgment against him on his wage discrimination claim. Title VII prohibits an employer from discriminating against an individual by providing that individual lower compensation because of his race or color. 42 U.S.C. § 2000e-2(a)(1). When the plaintiff lacks direct evidence of discrimination, we use the McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), framework to analyze circumstantial evidence of discrimination. McCann v. Tillman, 526 F.3d 1370, 1373 (11th Cir. 2008).

To state a prima facie case of wage discrimination under Title VII, a plaintiff must show that: (1) he belongs to a racial minority; (2) he received low wages; (3) similarly situated comparators outside the protected class received higher compensation; and (4) he was qualified to receive a higher wage. Cooper v. S. Co., 390 F.3d 695, 734-35 (11th Cir. 2004), overruled on other grounds by Ash v. Tyson Foods, Inc., 546 U.S. 454, 457 (2006). Once the plaintiff establishes a prima facie case, the defendant must state a legitimate, non-discriminatory reason for the pay disparity. Meeks v. Computer Assocs. Intern., 15 F.3d 1013, 1019 (11th Cir. 1994) (discussing McDonnell Douglas framework for gender-based

8

wage discrimination).  If the defendant advances a legitimate, non-discriminatory reason, the plaintiff must then establish by a preponderance of the evidence that the proffered justifications are actually a pretext for discrimination.  Miranda v. B & B Cash Grocery Store, Inc., 975 F.2d 1518, 1528-29 (11th Cir. 1992).

The plaintiff may demonstrate pretext by showing that the defendant's proffered reason for an adverse action is a cover-up for a discriminatory decision. Rojas v. Florida, 285 F.3d 1339, 1342 (11th Cir. 2002).  A reason is pretextual only if it is false and the true reason for the decision is discrimination.  Springer v. Convergys Customer Mgmt. Grp. Inc., 509 F.3d 1344, 1349 (11th Cir. 2007).  In other words, the plaintiff must show that a discriminatory reason more likely than not motivated the employer to pay him less.  Miranda, 975 F.2d at 1529.  We have explained that unfair treatment, absent discrimination based on membership in a protected class, is not an unlawful employment practice under Title VII.  Coutu v. Martin Cnty. Bd. of Cnty. Comm'rs, 47 F.3d 1068, 1074 (11th Cir. 1995).

Here, the district court did not err in holding that Robertson failed to present a genuine factual issue of pretext to challenge ICT's non-discriminatory reason for paying him less than Williams Spyers, a white co-manager.  For starters, the defendants' proffered legitimate, non-discriminatory reason for paying Spyers more money is supported by the undisputed record.  In October 2008, Robertson was promoted to co-manager of the maintenance department, along with Spyers, in

order to take stress away from Spyers. As co-manager, Robertson took over some of Spyers's responsibilities and handled additional responsibilities. In 2011, Spyers was paid about $4000 more per year than Robertson. Spyers had been ICT's maintenance department manager since 1996, and, thus, had 12 more years' experience and seniority working as a manager than Robertson. Robertson did not dispute that Spyers was a loyal, dedicated, hard-working, and trusted employee. In addition, Robertson received a pay raise every year he worked at ICT, and the difference between Spyers's pay and Robertson's was shrinking over time. On this record, ICT reasonably presented Spyers's seniority and managerial experience as a legitimate, nondiscriminatory reason for paying him more than Robertson.

The burden then shifted to Robertson to show pretext, but he failed to offer any record evidence suggesting that ICT's proffered reason for paying Spyers a higher salary was motivated by discriminatory animus based on Robertson's race. Instead, Robertson presented evidence that: (1) as a co-manager, he had more responsibilities than Spyers did; and (2) ICT does not have a formal seniority system of pay. But both of those arguments go towards showing that ICT's explanation was false, not to whether discrimination was the real reason. See Brooks, 446 F.3d at 1163. And while it may have been unfair that Robertson had more management responsibilities than Spyers, yet was paid less for a period of time, unfair treatment, absent racial discrimination, is not an unlawful employment

10

practice under Title VII.  See Coutu, 47 F.3d at 1074-75.  As a result, the district court did not err in granting summary judgment on the wage discrimination claim.

Similarly, we find no merit to Robertson's claim that the district court erred in finding that he failed to establish a prima facie case of race discrimination based on his suspension and demotion.[2]  Under Title VII, it is unlawful for an employer to "discharge any individual, or otherwise to discriminate against any individual" because of the individual's race.  42 U.S.C. § 2000e-2(a)(1).  To prevail under Title VII, evidence must be presented which is "sufficient to create an inference of discrimination."  Holifield v. Reno, 115 F.3d 1555, 1564 (11th Cir. 1997).

An employee may establish a claim of illegal disparate treatment through either direct evidence or circumstantial evidence.  Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1085 (11th Cir. 2004).  When reviewing race discrimination claims supported by circumstantial evidence, courts may use the McDonnell Douglas framework.  Burke-Fowler v. Orange Cnty., Fla., 447 F.3d 1319, 1323 (11th Cir. 2006).  To establish a prima facie case for disparate treatment, the plaintiff may show that:  (1) he is a member of a protected class; (2) he was subjected to an adverse employment action; (3) his employer treated similarly situated employees outside of his protected class more favorably than he was treated; and (4) he was

---

[2]    Robertson has made clear before the district court and on appeal that he was not claiming that he was terminated due to racial discrimination, but rather for retaliation.  Therefore, he has abandoned that claim.  See Jernigan, 341 F.3d at 1283 n.8.

11

qualified to do the job. Id. To determine whether employees are similarly situated in a discriminatory discipline case, we evaluate "whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways." Id. (quotations omitted). When making that determination, we require that the quantity and quality of the comparator's misconduct be nearly identical to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges. Id. If the plaintiff can present a prima facie case of race discrimination, and the employer articulates a legitimate, nondiscriminatory reason for the adverse employment action, the plaintiff must show that the articulated reason is a pretext for unlawful discrimination. Id.

Where the defendant offers the plaintiff's violation of a work rule as its defense, the reason "is arguably pretextual when a plaintiff submits evidence (1) that [he] did not violate the cited work rule, or (2) that if [he] did violate the rule, other employees outside the protected class, who engaged in similar acts, were not similarly treated." Damon v. Fleming Supermarkets of Fla., Inc., 196 F.3d 1354, 1363 (11th Cir. 1999). Nevertheless, this framework does not vitiate a plaintiff's ultimate burden to prove that his employer terminated him based on a discriminatory motive. Id. at 1363 n.3.

As for his race discrimination claim based on his suspension, Robertson did not present a prima facie case. It is undisputed that in July 2012, Robertson was

12

suspended after he got into a verbal altercation with Blair about why the maintenance department left furniture in the hallway. In his deposition, Robertson testified that, during the conversation, Blair warned that he could replace Robertson if he couldn't get the job done. Robertson said he took offense to this threat, stood up from his chair, pointed a finger at Blair, and was ready to physically fight him. While Robertson argues it was Blair's fault the furniture was left in the hallway, he does not dispute that he got into a verbal confrontation with Blair. And since Roberson has not identified a comparator outside his protected class who was not suspended under these circumstances, or presented any other evidence that would show that his suspension had anything to do with race, he did not establish a prima facie case of discrimination. Accordingly, the district court did not err in granting summary judgment to ICT on this claim.

As for his race discrimination based on his demotion, Robertson also did not present a prima facie case because he did not present a similarly-situated employee who was treated more favorably than him. It is undisputed that, on December 13, 2012, ICT removed Robertson's management responsibilities and reassigned him as a maintenance worker. ICT claims it took away Robertson's managerial responsibilities after several incidents in the maintenance department, including that: (1) Robertson assigned a student worker to clean an accounting office around the time money was stolen, even though Robertson had been told that student

13

workers were prohibited from cleaning administrative offices; (2) Robertson took the company truck to his nephew's auto shop for repair, and his nephew was arrested for driving the truck while intoxicated, which resulted in the vehicle being impounded; and (3) using ICT's master key, for which Robertson was responsible, a student worker assigned to Robertson's department stole two laptops.

Robertson disputes some facts surrounding these incidents with evidence and arguments about what the rules were, whether the student worker under his supervision actually stole money, what Blair knew beforehand about Robertson taking the company truck to his nephew's shop, whether the student who stole laptops from the IT department used a master key, and whether his personnel file included oral or written warnings about wrongdoings on his part related to these incidents. At the same time, he conceded that as the maintenance manager, he was responsible for his team and to get the job done. As for comparators, Robertson claimed that when students broke into ICT's production department and stole $600, the production manager, David Flores (Guamanian), was not demoted. He added that when students broke into another ICT building and stole copper because the plant manager, John Miller (white), had not reconnected the alarm system, Miller was not demoted. And he said that when money was stolen from the accounting department, neither the accounting manager, Bridgett Chrysanthis (white), nor the white employee who left her purse unattended were demoted or

14

fired. Lastly, he argued that his suspension and demotion after Spyers's death shows preferential treatment of Spyers, as well as the white student who stole the laptops but was allowed to continue his education at ICT.

Fatal to Robertson's claim is that he did not offer evidence that a similarly-situated ICT manager outside his protected class was also accused of multiple similar infractions, but was not demoted from a managerial position. As managers, Flores, Chrysanthis, and Miller were not involved in incidents "nearly identical" to Robertson's. See Burke-Fowler, 447 F.3d at 1323. Students did steal money and copper from ICT areas managed by Flores, Miller, and Chrysanthis, but Robertson was involved in three separate incidents calling into question his management judgment, whereas the other managers were not. As for the white student and other employee, they were not similarly situated to Robertson, since neither was a manager. As for Spyers, there is no evidence he managed student workers who stole from ICT or was otherwise involved in anything involving property damage. Because Robertson failed to establish valid comparators and to present any other evidence of racial discrimination, Robertson did not establish a prima facie case of race discrimination. Indeed, after Robertson was demoted, it is undisputed that ICT replaced him with another African-American employee. Overall, 44 percent of the managers at ICT were minorities and, between 2008 and 2012, all full-time employees in the maintenance department were African-American, except for

15

Spyers.    In addition, after Spyers passed away, ICT named Robertson the supervisor and sole manager of the maintenance department.  On this record, the district court did not err in granting summary judgment to ICT on this claim either.

We also reject Robertson's argument that the district court erred in granting summary judgment against him on his retaliation claims based on his demotion and firing.  Title VII provides that "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees. . . because he has opposed any practice made an unlawful employment practice by [Title VII], or because he has made a charge" under Title VII.  42 U.S.C. § 2000e–3(a).  Without direct evidence of unlawful retaliation, a plaintiff may avoid summary judgment with circumstantial evidence, using McDonnell Douglas's burden-shifting analysis.  Brown v. Ala. Dep't of Transp., 597 F.3d 1160, 1181 (11th Cir. 2010).

A prima facie case of retaliation has three elements: (1) the plaintiff engaged in statutorily protected conduct; (2) he suffered an adverse employment action; and (3) the adverse action was causally related to the protected expression.  Williams v. Motorola, Inc., 303 F.3d 1284, 1291 (11th Cir. 2002).  As is the case with discrimination claims, the employer must then proffer legitimate, non-retaliatory reasons for its actions upon an employee's prima facie showing.  Pennington v. City of Huntsville, 261 F.3d 1262, 1266 (11th Cir. 2001).  The ultimate burden of proving that these reasons are pretext for prohibited retaliation remains with the

16

plaintiff.  Id.  To show pretext, the plaintiff must show both that the reasons were false, and that retaliation was the real reason for the employment decision.  St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 515 (1993).  Alternatively, an employer may prevail on a retaliation claim if it proves that it would have made the same decision in the absence of the alleged bias.  Pennington, 261 F.3d at 1269.

Title VII retaliation claims require proof that the desire to retaliate was the but-for cause of the challenged employment action -- i.e., the plaintiff must show that the unlawful retaliation would not have occurred without the alleged wrongful action or actions of the employer.  Univ. of Texas Sw. Med. Ctr. v. Nassar, 570 U.S. 338, 358-59 (2013).  The burden of causation can be met by showing close temporal proximity between the statutorily protected activity and the adverse action.  Thomas v. Cooper Lighting, Inc., 506 F.3d 1361, 1364 (11th Cir. 2007).  But mere temporal proximity, without more, must be "very close."  Id. (quotations omitted) (holding that a three- to four-month disparity between the statutorily protected expression and the adverse employment action was not enough).

Again, the district court did not err in granting summary judgment to ICT on Robertson's retaliation claims.  As for his July 10, 2012 complaint of racial discrimination, Robertson failed to present evidence from which a reasonable jury could find any causal connection between that complaint and his demotion and termination five months later in December 2012.  Five months between the

17

statutorily protected activity and adverse action is not "very close," as to establish causation, without more.  See Thomas, 506 F.3d at 1364.  On appeal, as evidence of Blair's delayed retaliation, Robertson points to a memo written by Blair to Smith on July 10, 2012, in which Blair describes his suspension of Robertson for insubordination and suggests that Robertson be demoted from a manager to a supervisor.  But assuming Blair had received Robertson's July 10, 2012, complaint before writing the memo that same day, Blair's memo suggested demoting him based on his insubordination, not based on his discrimination complaint.  This evidence does not tend to show causation, especially since Robertson was neither demoted, nor fired, until five months later.  On this record, he did not establish a prima facie case for retaliation based on the July 2012 complaint.

As for his December 14, 2012, letter to Blair, in which he threatened to file a racial discrimination charge with the EEOC, the magistrate judge did not consider this issue, and Robertson did not object to the magistrate judge's failure to do so.  But even assuming Robertson stated a prima facie case of retaliatory discharge based on this December 14 letter, the defendants presented evidence of a legitimate reason to terminate his employment unrelated to his EEOC threat.  It is undisputed that, after Robertson's demotion on December 13, 2012, he was supposed to report to work the next day at 11:00 p.m., but failed to report to his new work assignment on December 14, 18, 20, and 21, 2012.  While Robertson called Brandon Smooth,

18

a maintenance technician, to report his December 14 absence, he did not call Blair or Smith to report his absences on December 14, 18, 20, and 21, 2012. Robertson admitted that ICT had a written policy for employees to call their direct supervisor when absent from duty. According to Blair and Smith, Robertson was fired on December 26, 2012 for missing work and failing to notify Blair, his supervisor, about his absences in accordance with ICT written guidelines. Blair testified that ICT had terminated other employees for violating the attendance policy.

Because ICT articulated a legitimate, non-retaliatory reason for terminating Robertson's employment, the burden then shifted to Robertson to produce sufficient evidence for a factfinder to conclude that this reason was pretextual. Robertson argues that, as a co-manager, neither he, nor Spyers, had ever been required to call Smith or Blair when absent, and showed that ICT did not enforce the policy against his wife. Specifically, Ms. Robertson, an African-American, testified that she only received a 60-day probationary period for missing too many days of work and not calling her direct supervisor.

However, Spyers and Ms. Robertson are not appropriate comparators, since Ms. Robertson is not outside her husband's protected class, and no evidence exists that Spyers had ever been demoted and subsequently failed to report to work without notifying his supervisor. See Burke-Fowler, 447 F.3d at 1323; Damon, 196 F.3d at 1363. Nor does Robertson dispute that ICT had a written policy

19

requiring employees to notify their supervisors of any absences, or that he received a copy of the employee handbook with the attendance policy. Further, Robertson has not presented evidence that Blair or Smith harbored any intent to retaliate against him for threatening to file a grievance. Because Robertson did not show that ICT's proffered reason for his termination was false or that the real reason was retaliation, he failed to establish pretext. See St. Mary's, 509 U.S. at 515.

Finally, we are unconvinced by Robertson's claim that the district court erred when it concluded that he lacked standing to bring a Title VI claim on behalf of a student, Anthony Bryant. To satisfy Article III's case or controversy requirement, a plaintiff must show that: (1) he has suffered injury in fact amounting to the invasion of a legally protected interest that is concrete and particularized and actual or imminent; (2) the injury is fairly traceable to the actions of the defendant; and (3) the injury is likely to be redressed by a favorable decision. Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 180-81 (2000); Hollywood Mobile Estates, Ltd. v. Seminole Tribe of Fla., 641 F.3d 1259, 1265 (11th Cir. 2011).

Here, the district court did not err in concluding that Robertson lacked standing to bring a Title VI claim on behalf of Bryant. Title VI provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to

20

discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d.   However, Robertson did not allege how he suffered any injury as a result of the disparate treatment of Bryant and Hamm.  See Harris, 20 F.3d at 1122.  Indeed, Robertson only alleged that Bryant was a student employee who he managed in ICT's maintenance department.  Robertson testified that, after Bryant was accused of stealing the money, Bryant asked Robertson what he could do about the accusations and Robertson told him to contact the Department of Education and hire an attorney.  Robertson testified further that he talked to Bryan twice after he got expelled, which was sometime before his demotion in 2012, but has not spoken to him since and does not know whether he ever hired a lawyer.  These facts are insufficient to establish an injury-in-fact for purposes of standing.  Accordingly, Robertson failed to establish standing to bring a suit on behalf of Bryant.

**AFFIRMED**.